UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DeLONDA K. COLEMAN,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, DEPARTMENT OF HEALTHCARE SERVICES,<br><br>Defendant. | No. 2:18-cv-02497 MCE AC<br><br>ORDER |

This case is before the court on plaintiff's motion to serve interrogatories in excess of the presumptive limit. ECF Nos. 20, 34 (joint statement). This discovery motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(1). The parties participated in an informal discovery conference with the magistrate judge on this issue on November 6, 2019 but were unable to reach an agreement and the court declined to rule absent a formal motion. ECF No. 19. This motion was subsequently filed and taken under submission. For the reasons stated below, the court denies plaintiff's motion.

**I.     Relevant Background**

Plaintiff is bringing claims of race discrimination, retaliation, and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964. ECF No. 1 at 1. The following is a summary of plaintiff's allegations. Plaintiff began working for the State of California

1

Department of Health Care Services as an Attorney III on June 2, 2016 in the Mental Health and Substance Use Disorder Services Team ("MHSUDS team"). Id. at 2-3. Plaintiff was solicited by a MHSUDS team member, Melissa Corral ("Corral"), who plaintiff worked with at another state department in 2003, where Plaintiff was employed as an Associate Budget Analyst. Id. at 3. The MHSUDS team was established in 2013, and at its inception, the team lacked specific policies, procedures or training manuals. Id. at 3. MHSUDS team members often collaborated with one another in groups. Id. When plaintiff joined, the group consisted of two Attorney Is, five Attorney IIIs, two Attorney IVs, and plaintiff's supervisor Lisa Velazquez, Senior Assistant Chief Counsel. Id. Plaintiff is Black, and all other MHSUDS team members were non-Black. Id. at 2-3.

When plaintiff was interviewing for MHSUDS, team member Melissa Corral told her that because the MHSUDS team was so new, it was almost impossible for any attorney to have related experience prior to coming onboard. Id. Velazquez offered plaintiff the Attorney III position and informed plaintiff that she would support her through what would be a steep learning curve on the very complex and specialized MHSUDS team. Id. Plaintiff believes and alleges that, although she was qualified for the position, she was solicited and hired to give the appearance of complete racial diversity on the MHSUDS team. Id. at 3-4.

Between June and September of 2016, plaintiff completed 26 assignments and was routinely praised for her performance by Corral and Velazquez. Id. at 4. In July 2016, though plaintiff was co-assigned to analyze a number of new federal rules, plaintiff volunteered to independently analyze and interpret 27 new federal rules. Id. Plaintiff's interpretation of the 27th new federal rule did not align with that of Velazquez. At this point, plaintiff believes and alleges that Velazquez's unfavorable treatment towards her shifted towards unlawful discrimination based on plaintiff's Black race.

On September 2, 2016, plaintiff sent Velazquez an email requesting to attend a two-day Legislative Bill Analysis course specifically designed for state employees who were required to analyze legislative bills to determine its impact on a state department or program. Id. at 4. Defendant contracted out and advertised the training to its employees, and plaintiff's request for

2

the training was in anticipation of the upcoming legislative bill analysis season. Id. Although plaintiff's duties required her to analyze legislative bills to determine their impact on a state department or program, Velazquez responded in 13 minutes and denied plaintiff's request to attend the training, stating it did not seem to be very useful for an attorney. Id. at 4-5. Plaintiff alleges Velazquez has repeatedly authorized several of plaintiff's similarly situated non-Black colleagues to attend trainings that were not clearly geared toward or useful to attorneys. As a result, plaintiff believes Velazquez treated plaintiff's similarly-situated non-Black colleagues more favorably than plaintiff.

## II. Motion

Plaintiff seeks leave to exceed the presumptive 25 interrogatory limit by 40 interrogatories (interrogatories 26-65). ECF No. 35 at 4-11. Defendant opposes the motion. ECF No. 34 at 20. Plaintiff proposed the following additional interrogatories, organized by category:

- [A.] Disparate Treatment:

- Interrogatory No. 26. Why were other non-African American Attorneys, who struggled as Plaintiff did with some legislative analysis, provided training while she was denied similar training

- Interrogatory No. 27. Why was she the only African American attorney in the entire Department on Lisa Velasquez's team?

- Interrogatory No. 28. Why did Goldman deny Plaintiff's request for a reasonable accommodation to work under another Supervisor and instead returned Plaintiff to work under Ms. Velasquez - her harasser?

- Interrogatory No. 29. Besides Plaintiff's Supervisor (Velasquez), who else participated in and signed off on Plaintiff's two probationary/ performance evaluations?

- Interrogatory No. 30. Was the decision by Ms. Velasquez to deny Coleman the training she asked for, Velasquez's decision alone?

- Interrogatory No. 31. In regard No. 30, if Velasquez was not the sole decision maker regarding training, who else made decisions about authorizing training for Coleman's team (under Velasquez)?

- Interrogatory No. 32. Why was Plaintiff hired by the Department?

- Interrogatory No. 33. Did Goldman offer Plaintiff to stay on

Probation so long as she agreed to leave the Department after her Probationary period ended?

- Interrogatory No. 34. Has there been other African American Attorneys hired by the Department in the last 10 years who passed their probationary period under Lisa Velasquez?

- Interrogatory No. 35. Please describe with detailed particularity all facts supporting YOUR declining to admit an RFA.

- [B.] Interrogatories about Your Recruiting COLEMAN:

- Interrogatory No. 36. Please describe the reasons and motivations as to why COLEMAN was recruited/contacted and ultimately hired by Defendant.

- [C.] Interrogatories about the MHSUDST Standard:

- Interrogatory No. 37. Please describe the MHSUDST STANDARD set by Lisa Velasquez for her team with detailed particularity. "MHSUDST STANDARD" as used herein shall mean the set of criteria (a) some of which criteria might be memorialized in writing, others of which criteria might not be memorialized in writing; (b) each of which criteria apply to all MHSUDST ATTORNEYS; and (c) which set of criteria is used by MANAGEMENT to determine whether any WORK of any MHSUDST ATTORNEY meets MANAGEMENT'S standards of work-product quality, efficient use of time and resources, attendance, professional deportment, and appropriate Work-related communications with MANAGEMENT, with other MHSUDST ATTORNEYS and with other PERSONS within and outside MHSUDST.

- Interrogatory No. 38. Please IDENTIFY each witness who has personal knowledge related to the MHSUDST STANDARD as set by Lisa Velasquez for her team.

- [D.] Interrogatories about Attorney Knowledge and Training

- Interrogatory No. 39. Please describe all work assigned to COLEMAN as it relates to SPECIALIZED MHSUDST KNOWLEDGE for Defendant. "SPECIALIZED MHSUDST KNOWLEDGE" when used herein shall mean any and all specialized knowledge that is outside the scope of what most attorneys know and yet that is necessary for MHSUDST ATTORNEYS to know in order from them to perform WORK that meets the MHSUDST STANDARD."

- Interrogatory No. 40. Please describe the SPECIAL TRAINING POLICY criteria with detailed particularity as used by Lisa Velasquez for her team of attorneys at MHSUDST. "SPECIAL TRAINING POLICY" when used herein shall mean the set of criteria (a) some of which criteria might be memorialized in writing, others of which criteria might not be memorialized in writing; (b) each of which criteria apply to all MHSUDST

4

ATTORNEYS; and (c) which set of criteria is used by MANAGEMENT to determine whether any MHSUDST ATTORNEY is in need of training in SPECIALIZED MHSUDST KNOWLEDGE and, if so, to provide for such training, including via one or more SPECIAL TRAINING CLASS(ES).

- Interrogatory No. 41. Please IDENTIFY each MHSUDST ATTORNEY other than COLEMAN from MHSUDST's inception to the last date COLEMAN worked for Defendant. "MHSUDST ATTORNEY" as used herein shall mean any attorney including COLEMAN who, at any time from MHSUDST's inception, through the present, was or is employed by DHCS and, as so employed, was or is assigned to work as a member of the MHSUDST.

- Interrogatory No. 42. For each MHSUDST ATTORNEY identified in YOUR response to Interrogatory No. 33, please IDENTIFY every SPECIAL TRAINING CLASS as defined under Interrogatory No. 32. that such attorney has attended in the course of his or her DHCS employment duties. "SPECIAL TRAINING CLASS" when used herein shall mean any class, seminar, education program or training opportunity that, upon MANAGEMENT approval, MHSUDST ATTORNEYS are eligible to take during their paid time, the costs of which are paid by DHCS, OLS and/or MHSUDST, and the topics and/or curriculum of which includes some SPECIALIZED MHSUDST KNOWLEDGE.

- Interrogatory No. 43. Describe with detailed particularity the grounds on which VELAZQUEZ denied COLEMAN'S request to attend the SEPT 2016 BILL ANALYSIS CLASS, including why VELAZQUEZ wrote in the SEPT 2, 2016 EMAILS, "This doesn't seem to be very useful for an attorney," "BILL ANALYSIS CLASS" when used herein shall mean the class offered via DHCS whose enrollment was open to both attorneys and non-attorneys, and whose curriculum was similar to that of the SEPT 2016 BILL ANALYSIS CLASS. Additionally, "SEPT 2, 2016 EMAILS" when used herein shall mean the email thread of September 2, 2016, principally between COLEMAN and VELAZQUEZ (with cc to CORRAL), original subject line "Upcoming Training: Legislative Bill Analysis 9/28-9/29/2016," a copy of which is set forth in Exhibit 1 attached hereto.

- Interrogatory No. 44. In reference to Interrogatory 43, when the very topic of the class was focused on SPECIALIZED MHSUDST KNOWLEDGE that COLEMAN allegedly lacked why was she still required to perform such ASSIGNMENTS without training.

- [E.] Interrogatories about the Assignments:

- "ROPPE" as used herein shall mean any ROP for Probationary Employee that reviews and/or reports on the job performance of any probationary MHSUDST ATTORNEY. "FIRST ROPPE"

as used herein shall mean the ROPPE regarding COLEMAN dated October 24, 2016, and signed by VELAZQUEZ, a copy of which is set forth in Exhibit 2 attached hereto. "SECOND ROPPE" as used herein shall mean the ROPPE regarding COLEMAN dated February 3, 2017, and signed by VELAZQUEZ, a copy of which is set forth in Exhibit 3 attached hereto.

- Interrogatory No. 45. Please describe with detailed particularity how COLEMAN'S work on her First ASSIGNMENTs fell below MHSUDST STANDARDS for Department attorneys that resulted in negative COMMENTS about Coleman in her FIRST ROPPE.

- [ . . .]

- Interrogatory No. 46. Please describe with detailed particularity how COLEMAN'S work on her Second ASSIGNMENT fell below MHSUDST STANDARDS for Department attorneys that resulted in negative COMMENTS about Coleman in her FIRST ROPPE and /or SECOND ROPPE. [ . . . ]

- Interrogatory No. 47. Please describe with detailed particularity how COLEMAN'S work on her Third ASSIGNMENT fell below MHSUDST STANDARDS for Department attorneys that resulted in negative COMMENTS about Coleman in her FIRST ROPPE and/or the SECOND ROPPE. See definitions under Interrogatories Nos. 45 and 46.

- Interrogatory No. 48. Please describe with detailed particularity how COLEMAN'S work on her Fourth ASSIGNMENT fell below MHSUDST STANDARDS for Department attorneys that resulted in negative COMMENTS about Coleman in her FIRST ROPPE and/or the SECOND ROPPE. See definitions under Interrogatories Nos. 46 and 47.

- Interrogatory No. 49. Please describe with detailed particularity how COLEMAN'S work on her Fifth ASSIGNMENT fell below MHSUDST STANDARDS for Department attorneys that resulted in negative COMMENTS about Coleman in her FIRST ROPPE and/or the SECOND ROPPE. See definitions under Interrogatories Nos. 46 and 47.

- Interrogatory No. 50. Please describe with detailed particularity how COLEMAN'S work on her Sixth ASSIGNMENT fell below MHSUDST STANDARDS for Department attorneys that resulted in negative COMMENTS about Coleman in her FIRST ROPPE and/or the SECOND ROPPE. See definitions under Interrogatories Nos. 46 and 47.

- Interrogatory No. 51. For each ASSIGNMENT where COLEMAN'S WORK was "CRITICIZED" or "NEGATIVELY" commented on, or fell below MHSUDST STANDARDS for Department attorneys, please IDENTIFY each witness who has personal knowledge related to the notion that COLEMAN'S

WORK on the ASSIGNMENTS fell below the MHSUDST STANDARD.

- [F.] Interrogatories about Identification

- Interrogatory No. 52. Identify who participated in the drafting of the responses to these interrogatories. "IDENTIFY" when used herein with respect to a natural person shall mean state the person's first name, last name, address and telephone number.

- [G.] Investigations/Inquiries of Velasquez' Conduct

- Interrogatory No. 53. Describe in full any and all investigations or inquiries conducted by the defendant employer's assistant general/ chief counsel and/or investigations or inquiries in which the defendant employer's assistant general/chief counsel participated or assisted, with regard to allegations against the defendant employer's attorneys, including, but not limited to, conduct that was alleged to have been unlawful, unethical, inappropriate, discriminatory and/or in violation of the defendant employer's policies.

- [H.] Persons Reporting to [sic.]

- Interrogatory No. 54. Identify the names and addresses of all attorneys and other personnel who report directly to the person identified in response to the preceding interrogatory (No. 53.)

- [I.] Attorney III/IV Recruiting Efforts

- Interrogatory No. 55. List the names of any and all publications, websites, personnel agencies, and similar entities which the defendant employer contacted, retained, or otherwise dealt with for the purpose of filling the Attorney III/IV positions in the defendant employer's office located in Sacramento for the period of MHSUDST's inception to the present.

- [J.] Recruitment of Plaintiff

- Interrogatory No. 56. State whether the defendant employer attempted to recruit plaintiff for employment.

- [K.] Attorney IIIs' Compensation

- Interrogatory No. 57. State the salary, value of any special benefits, bonuses, and other such compensation provided to Plaintiff Coleman as an Attorney III or the position Attorney Ills in defendant employer's agency.

- [L.] Harassment/Discrimination -Written Policy

- Interrogatory No. 58. State whether the defendant employer had a written harassment policy and/or anti-discrimination policy in effect, for the period of MHSUDST's inception through the

- present, and, if a written policy existed, provide a copy of the same.

- [M.] Discrimination/Harassment Complaints Lodged - Identification

- Interrogatory No. 59. Describe all complaints which the defendant employer, its agents, or representatives are aware of, regarding any form of discrimination and/or harassment as lodged against Velasquez or any manager or employee of the defendant employer from MHSUDST's inception through the present.

- [N.] Details

- Interrogatory No. 60. List any and all complaints of harassment, race discrimination and/or retaliation lodged against Velasquez from MHSUDST's inception to the present.

- Interrogatory No. 61. Limited only to Velasquez, for each response to Interrogatory No. 60, please provide a description of the outcome of each complaint.

- Interrogatory No. 62. The name and addresses of the person(s) accused of discrimination and/or misconduct raised in Plaintiff's Complaint.

- [O.] Responsible Managers/Supervisors with Responsibility for Complaints

- Interrogatory No. 63. Identify the names and address of all managers and supervisors with responsibility for handling complaints of discrimination, harassment, disparate treatment, retaliation, and/or inappropriate workplace conduct.

- [P.] Lawsuits/Charges Filed Regarding Discrimination

- Interrogatory No. 64. Identify any lawsuits filed in federal or state court, and/or any charges filed with administrative agencies, including, but not limited to, the Equal Employment Opportunity Commission ("EEOC"), the Department of Fair and Employment (DFEH); Sacramento Human Rights Commission, and/or the State of Human Rights Commission, against the defendant employer involving charges of discrimination and retaliation in employment since January 1, 2010.

- Interrogatory No. 65. Set forth the manner (if any) each complaint and/or charge was resolved or concluded.

### III. Analysis

A. <u>Legal Standard</u>

Federal Rule 33(a)(1) states that "[u]nless otherwise stipulated or ordered by the court, a

party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." The Advisory Committee Notes specify that the aim of the limitation "is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." Adv. Comm. Notes to Rule 33 (1993 Amend.). Under Rule 26(b)(2), the court "must limit the frequency or extent of discovery" if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 26(b)(1) limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Many courts considering requests to exceed the standard limits for the number of interrogatories or depositions—including this court—have required the party requesting additional interrogatories or depositions to "make a 'particularized showing' as to why additional discovery is necessary" before proceeding to evaluate whether the request is consistent with Rule 26(b)(2). Waterbury v. Scribner, No. 1:05-CV-0764 OWW DLB PC, 2008 WL 2018432, at *8 (E.D. Cal. May 8, 2008) (citing Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota, 187 F.R.D. 578, 586 (D. Minn. 1999)); see, e.g., Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc., No. 2:17-CV-01515 KJM AC, 2019 WL 1437767, at *2 (E.D. Cal. Apr. 1, 2019) ("A party seeking leave of court to exceed 10 depositions must make a "particularized showing" why the discovery is necessary under Rule 26."); Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc., No. 2:17-CV-01515 KJM AC, 2018 WL 5993585, at *1, 4 (E.D. Cal. Nov. 6, 2018) (same); Couch v. Wan, No. 1:08-CV-1621 LJO DLB, 2011 WL 4499976, at *1 (E.D. Cal. Sept. 27, 2011).

However, recognizing that this "particularized showing" standard does not appear in the text of the rules themselves, many courts have also eschewed imposing this heightened burden on parties seeking to exceed the default discovery limits. See City of Lincoln v. United States, No. 2:16-CV-01164 KJM AC, 2018 WL 3917711, at *8 (E.D. Cal. Aug. 16, 2018) (noting that "many courts have not relied on a 'particularized showing' standard, a standard developed by federal district courts," and collecting cases; further finding that, regardless, the requesting party in that case had made a particularized showing); Vazquez v. Kraft Heinz Foods Co., No. 16-CV-2749-WQH (BLM), 2018 WL 1898558, at *3 (S.D. Cal. Apr. 19, 2018); Pitkin v. Corizon Health, Inc., No. 3:16-CV-02235 AA, 2018 WL 1336047, at *2 (D. Or. Mar. 13, 2018). These courts rely on Laryngeal Mask Co. Ltd. v. Ambu A/S, No. 3:07-CV-01988 DMS NLS, 2009 WL 10672436 (S.D. Cal. July 17, 2009), in which the court declined to adopt a "particularized showing" requirement. Id. at *4. In Laryngeal, the court noted that "[t]he plain language of the Rules and the Advisory Committee Notes do not require a particularized showing," but rather "consisten[cy] with Rule 26(b)(2)." Id.; see also Fed. R. Civ. P. 33(a)(1) (leave to serve additional interrogatories "may be granted to the extent consistent with Rule 26(b)(1) and (2)"). Rule 26(b)(2), in turn, "requires that the court apply a benefits versus burden approach and ensure that the discovery is not unreasonably cumulative or duplicative." Laryngeal, 2009 WL 10672436 at *4.

        B.      Plaintiff's Motion Seeks Burdensome, Duplicative, Unnecessary Discovery

Even under the most liberal interpretation of the discovery rules, plaintiff's motion must be denied. Denial is appropriate for at least two reasons. First, plaintiff's request is extreme; she seeks not one or two or even ten additional interrogatories, but forty – which is fifteen more interrogatories than would be presumptively allowed if this were her first set, and resulting in a total number of interrogatories 2.6 times the presumptive limit. Further, even the most cursory review of the proposed additional interrogatories makes obvious that they will require much time and attention to properly answer. Allowing plaintiff to require defendants to respond to sixty-five interrogatories, particularly in the context of a relatively straightforward employment discrimination case, would be to allow her to make "excessive use of this discovery device."

10

Adv. Comm. Notes to Rule 33 (1993 Amend.).

Second, and perhaps more importantly, the vast majority of plaintiff's interrogatories can be addressed "from some other source that is more convenient, less burdensome, or less expensive," specifically, deposition testimony. Defendant states that the parties had already agreed to deposition dates for Melissa Coral and Lisa Velazquez, but that plaintiff took the depositions off calendar in light of this pending motion. ECF No. 34 at 20. This case has been pending for one and a half years, and defendant states that plaintiff has yet to take a single deposition. ECF No. 24 at 23. Plaintiff has had ample opportunity to seek answers to the questions presented in her proposed additional interrogatories via deposition testimony; her failure to do so cannot be allowed to result in an undue burden to the defendant. Discovery in this matter closes February 12, 2020. ECF No. 17. Plaintiff still has time to notice the depositions. Because the discovery plaintiff seeks is available by "more convenient, less burdensome, or less expensive" means, the additional interrogatories are not necessary and will not be permitted. Fed. R. Civ. P. 26(b)(2)(C).

C. Request for 60 Day Extension of Discovery Deadline

Plaintiff requests, without a motion and in the middle of the joint statement, a 60-day extension of the discovery deadline. ECF No. 34 at 17. Plaintiff acknowledges that defendant opposes the extension. Id. This request is not properly before the undersigned and will not be addressed here. For the benefit of both parties, the court notes that any request for an extension of the discovery deadline that will impact other deadlines in this case, such as the dispositive motions deadline, must be brought before the assigned District Judge.

**IV. Conclusion**

Plaintiff's motion to exceed the presumptive interrogatory limit (ECF No. 20) is DENIED because plaintiff has not met her burden of showing that the additional interrogatories are necessary or appropriate under the circumstances of this case.

DATED: February 6, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11